## George Drew *v.* Hosea Spaulding.

A person distraining cattle damage feasant, must drive them to the pound in a reasonable time, considering the circumstances. What time is reasonable, is to be determined by those who try the case.

To justify a distress of cattle damage feasant, it is not necessary to show that the land is enclosed, except as against an adjoining owner.

An application for the appointment of appraisers to appraise the damage done by cattle, may be made after four days, without joining an application for the sale or appraisal of the animal, which may be done afterward by a separate application.

The omission of appraisers to take the oath prescribed, before issuing notice of their sitting, may be waived by the appearance of the party without objecting after notice of the omission.

If two only of three appraisers act, their report will be defective.

Mere delay of the party distraining to obtain an order of sale, does not make him a wrongdoer *ab initio.*

Trover lies for goods taken by a wrongful distress.

Under the general issue in trover, the defendant may show a taking of the animal in question as a distress damage feasant.

Trover for a cow; plea, the general issue.

The parties agree upon the following statement of facts : The plaintiff's cow was taken up by the defendant, at 5 o'clock, P. M., Oct. 4, 1862, doing damage in his buckwheat field, which was not fenced. At the time the defendant took up the cow, he was ready to go to Nashua, 5 miles distant, with milk for his customers there, who were so situated that it required his personal attention there to distribute his milk. He drove the cow about 30 rods to his barn-yard, through his field in a partially opposite direction from the pound, where he left her in charge of his father, with directions, if Drew came after her, to let him have her if he would pay the damages; also to go and see if the pound was in repair, and a pound-keeper had been sworn, as the pound had been out of repair and unfit for use, and no keeper sworn for a long time, and until a few days before, and the pound was in an unfrequented part of the town, though in the territorial centre. On his return from Nashua, the defendant started a man with the cow to the pound, and followed himself as soon as he could make out the notices to leave with the pound-keeper and the owner of the cow. The defendant started from his house for the pound at about 10 o'clock, and his man started with the cow from 15 to 20 minutes before him.

On the same day the defendant put the cow in the pound, and left a notice with the pound-keeper, stating that the cow was found doing damage on his premises in said Merrimack, lying on the road leading from his dwelling house westerly to South Merrimack, and a like notice with the plaintiff, estimating his damages at five dollars, and giving a correct statement of his charges. The cow remained in the pound until the 9th of October, (neither party having made application for the appraisal of damages,) when the defendant applied to a justice for the appointment of three disinterested persons, to appraise the damages done on his premises in said town of Merrimack, lying on the north side of the road leading from his dwelling house westerly to South Merrimack, "known as my buckwheat field." The justice issued on the same day an order, that the plaintiff appear on the 14th of said October, and show cause why

appraisers should not be appointed.  On that day the justice appointed C. A. Brigham, G. W. Berry and J. Carroll, appraisers, who on the same day served a notice upon the plaintiff, that they would appraise the damages on the 15th of October.  They were not sworn to the faithful discharge of their duties till the 15th.  Said appraisers made a report, of which the following is a copy:  "Having given due notice to the parties of the time and place of hearing, we met on the premises within mentioned, known as the buckwheat field, on the 15th day of October, A. D. 1862, at four of the clock in the afternoon, and we proceeded to view the premises and to hear the parties and their evidence, and having viewed said premises and heard the allegations and proof of the parties, we report that damage was done by said cow mentioned in the foregoing application, on the fourth day of October, 1862, the time of their last being on said premises, and we estimate the damage done to said premises by said cow at that time only at two dollars and fifty cents.

Signed,                          C. A. BRIGHAM,
                                 G. W. BERRY."

Fees $2.00
Merrimack, October 15th, 1862.

On the 18th of the same October, the defendant made application to the same justice for the sale of the cow, who, on the same day, issued his order to the plaintiff to appear on the 24th of said October, to show cause why the cow should not be sold.  And the justice, on the 25th day of said October, issued his warrant for the sale of the cow, and the defendant on the same day advertised the cow, and, on the 29th of October, sold her to J. Kennard for eighteen dollars, who, afterwards and before the commencement of this suit, returned her to the plaintiff on payment of that sum.

The defendant contends that the action of trover is not the proper action; and the plaintiff claims that the foregoing facts cannot be proved under the general issue.

*Parker & Johnson*, for plaintiff.

I.  When the defendant drove the cow to his barnyard, and delivered her to another person, with the order to deliver her to the plaintiff, if he came for her, and would pay the damages, he abandoned all right to take her to the pound, and the re-seizure of the cow for the purpose of taking her there was illegal.  It is immaterial what the purpose of the defendant was in going to Nashua, it would in no way justify the re-seizure of the creature.  *Adams* v. *Adams*, 13 Pick. 384; Dane's Ab. ch. 2, art. 5, sec. 9.

II.  The defendant's notices were in all cases informal, imperfect and incorrect.  Notices must be not only substantially but formally correct. In this State, notices and other papers state that the creature was found doing damage in the defendant's enclosure.  The defendant's notices and all other papers, except the application for sale and warrant, allege that

the cow was doing damage *on his premises.* *Lindon* v. *Hooper*, Cowp. 417 ; Dane's Ab., cited above.  This being a proceeding under the statute, the provisions of the statute must be strictly followed.

III.  The case finds that the defendant made application for the appraisal of the cow, after she had been impounded four days.  The defendant must have made such application under the 7th section of chapter 43 of the Revised Statutes, when he should have made the application under the 10th section, and, at the same time, applied for an order for the sale of the cow.

IV.  The appraisers were appointed on the 14th of October, and, on the same day, issued a notice to the plaintiff to attend the appraisal on the next day, but were not qualified to act until the 15th, rendering the notice illegal and void. *Petition of Gilford*, 25 N. H. 124 ; *Ela* v. *McConihe*, 35 N. H. 279.

V.  The report of the appraisers is insufficient, because it does not show that more than two of the appraisers were present.  *Walker* v. *Melcher*, 14 Mass. 148 ; *Short* v. *Pratt*, 6 Mass. 496.  This case is directly in point.

VI.  The application on the 18th of October, for the sale of the cow, was illegal, because it was not made at the same time of the application for the appraisal.  N. H. C. S. ch. 143, sec. 10.

VII.  The sale of the cow on the 29th of October was illegal, inasmuch as the detention of the cow in the pound from the 4th of October to that day, shows gross laches, making the defendant a wrongdoer from the beginning.

VIII.  Trover can always be maintained where trespass can, if there has been a conversion ; and an illegal sale, or even detention, would be a conversion.

IX.  The case shows that the field was not fenced on either side ; and we contend that no person can avail himself of the statute on impounding, until he makes his field an enclosure.  N. H. C. S. ch. 143, secs. 1, 2, 17 ; *Webster's Dictionary, Bouvier's Law Dictionary,* for the term *enclosure.*

*W. W. Bailey,* for defendant.

I.  The defendant conducted with the cow as the time and circumstances would permit.  The cow was put into his barnyard as a matter of safety.  There was no thought or intention of impounding the cow in the barnyard, and there was no abandonment of her, nor abuse of authority, and the case shows that she was strictly in the possession of the defendant and his servant or agent, all the time till she came into the possession of the pound-keeper.  It was a necessary precaution to ascertain the condition of the pound, under the circumstances ; neither would it be reasonable to compel the plaintiff to neglect his customers, and cause great inconvenience by failing to distribute his milk on that day, being Saturday ; otherwise the case shows every possible diligence to get the cow to the pound.

II.  The statute is to have a reasonable construction, and its require-

ments are to be reasonably fulfilled as to time, &c.  *Rollins* v. *Jones*, 39 N. H. 475.

III.    The defendant cannot be found guilty of laches, because he did not apply for an order for a sale at the same time he applied for an appraisal, since, in case the appraisers found there had been no damages, or merely nominal damages, there could have been no sale, and it was necessary that the owner of the cow should have a reasonable time, in which to pay the damages before the sale ; neither could he be guilty of laches, if each step was taken in its proper time, even though it took him from October 4th to October 29th, and the plaintiff seems to be able to specify only one instance, being the one just mentioned. *Osgood* v. *Green*, 33 N. H. 318.

IV.    The appraisers may be sworn after the performance of their duties.    See Fox's Town Officer.    The cases cited by the plaintiff are not in point. *Petition of Gilford* has reference to the oath of office of road commissioners, and *Ela* v. *McConihe* has reference to a committee to make partition appointed by the judge of probate, in which case the statute provides that the committee shall be sworn before proceeding to a hearing.

V.    The report of the appraisers is sufficient under our law ; but, even if defective in this respect, it is such an accidental error as can now be remedied, as it appears, from the papers in the case, that all three were present and acted, as the notice of the hearing was signed by all three, and all three were sworn.    *Walker* v. *Melcher*, 14 Mass. 148.

VI.    All the matters in this action can be proved under the general issue.    2 Greenl. Ev. sec. 648, and cases there cited.

VII.    Every man's land is encircled with an actual or imaginary fence, and the terms *close, enclosure,* are used to signify the interest in the soil.    3 Bla. Com. 209 ; Dr. &. St. 30 ; 2 Stra. 1004 ; 1 Burr. 133 ; Bouvier's Law Dict. *Close*, and cases there cited ; 2 Wharton, 430.

VIII.    The defendant's notices are in form such as are laid down in Fox's Town Officer, (last edition,) and the plaintiff specifies but one instance, in which the precise words are not used, and, in that case, other words meaning the same are employed.

BELL, C. J.    Upon the first point raised by the plaintiff, I have not been so fortunate as to find any authority.    Upon the reasons of the case, it would seem that a party, seizing cattle trespassing on his land, should not be bound to lay aside all other business, and proceed forthwith to drive them to the pound.    He should be allowed a reasonable time for the purpose, regarding all the circumstances ; as, if he had found the cattle injuring his crops at midnight, he should not be required to drive them to the pound till a reasonable hour in the morning.    What is reasonable is in every case to be determined by the sound judgment of those who try the case, except where repeated decisions of the courts have fixed a rule.    This case is not of that class.

The case of officers making arrests, presents the nearest analogy to this, that I have been able to find.    Chitty (1 Cr. Law, 59,) says,

when the officer has made his arrest, he is as soon as possible to bring the party to the jail, or to the justice, according to the import of the warrant, and if he is guilty of *unreasonable* delay, it is a breach of duty. 2 Hale, 102 ; Foster, 119.   But if the time be unreasonable, as in or near the night, whereby he cannot attend the justice ; or if the party be ill and unable at present to be brought ; or if there be danger of a rescue ; he may, as the case shall require, secure him in the stocks, or, in case the quality of the prisoner, or his indisposition so require, detain him in a house till the next day, or until it may be reasonable to bring him.    2 Hale, 119, 120, 95, 96.   To the same point are Com. Dig. Imprisonment, H. 5 ; Saunders' Pl. & E. 520 ; Leigh's N. P. 1434–5 ; Ham. N. P. 142 ; Wat. Arch. Cr. Pl. 24–1, and 34–2 ; *Davis* v. *Capper,* 4 C. & P. 434 ; S. C. 10 B. & C. 28 ; where it was held that the reasonableness of the time of commitment is a question for the jury, under the direction of the court.   *Scavage* v. *Tateham,* Cro. Eliz. 829 ; *Wright* v. *Court,* 4 B. & C. 596 ; 6 D. & R. 623 ; *Arnold* v. *Steeves,* 10 Wend. 514 ; *Pratt* v. *Hill,* 16 Barb. 303.

At the time the cow was taken up, 4 o'clock, P. M., the pound had been out of repair and unfit for use, and for a long time no poundkeeper had been sworn.   It was at a distance, and in an unfrequented part of the town.   It was not unreasonable that time should be taken to ascertain if the pound was in a legal condition, since in that case the cow must be impounded there, and if not, then in the injured party's own barn or enclosure.   It could not be useful to drive the animal to the town pound, supposed to be ruinous, only to be driven back.   Whether more than a reasonable time was taken for this purpose is not stated, and we think there are no sufficient data in the case to enable us, as matter of law, to say that the time was so unreasonable as to render illegal the subsequent proceedings.   The question is one proper for the jury.

II.   As in the eye of the law every man's land is enclosed, though not surrounded by any visible and material fence, there seems to us no substantial foundation for either of the positions taken by the plaintiff, that the party cannot avail himself of the statute on impounding till he makes his field an enclosure ; and that the notices are bad because they do not state that the animal was doing damage in the defendant's enclosure, but only on his premises.   It sufficiently appears that the creature was doing damage to the defendant's real estate, and any land is deemed an enclosure.   We see no reason to suppose that the statute was intended to apply only to lands actually enclosed by fences : 2 Hill Torts, 38 ; Walk. Am. Law 553 ; 2 Bla. Com. 209 ; Ham. N. P. 151 ; except as against adjoining owners.   Rev. Stat. ch. 136 sec. 12.

III.   The application for an appraisal of the damages was properly made under the 7th section of the statute, which provides, that, if the owner   *   *   shall neglect for the space of forty-eight hours, or shall refuse to pay the damages estimated by the party impounding,   *   * either of said parties may apply to some justice of the peace,   *   *   * appoint three disinterested persons to appraise such damages.   The 10th

section provides, that, if such creatures impounded shall remain in the pound for four days,     *     *     the person impounding     *     *     may apply to a justice for an appraisal of the damages, if no appraisal· has been made, and for an order for the sale or appraisal of such property. As either party may apply for an appraisal of the damages, and only the party impounding, for a sale or appraisal of the animal, it seems evident that it could not have been the intention that the word *may* should be construed *shall*, so that, after four days, the application must be for both the appraisal of the damages and the appraisal or sale of the property; but that the design was to give to either party the option of a separate appraisal of the damages, and to the party impounding the right to unite the two objects in one application, where the damages had not been appraised.     The construction, which would make the condition, "if no appraisal has been made," a condition precedent to an application for an order of sale, or appraisal of the property, is inadmissible.

IV.   The omission of the appraisers to take the oath required by the statute, before issuing notice to the party, is waived, if the party having notice of the fact proceeds to the hearing without objection.   *Pet. of Gilford*, 35 N. H. 124; *Ela* v. *McConihe*, 35 N. H. 279.   Where the law requires an oath, before proceeding, and the party objecting has no notice, it is a fatal defect.   35 N. H. 279.   So far as we can form an opinion from the imperfect state of facts presented by the case, it seems fair to infer that any objection in this case was waived, since the appraisers state that they "heard the parties and their evidence;" but the fact is not so stated as to make it certain that the time of taking the oath was known to the plaintiff.

V.   The report is signed by two of the appraisers only.   It is objected that it does not appear that the third acted as an appraiser, or was even present.   The principle of the objection is sound.   The only doubt is whether the case shows the fact to be as the objection assumes. The justice appointed three appraisers; the case then says: "Said appraisers, on said 14th day of October, served a notice upon the plaintiff, that they would appraise the damages on the 15th of said October, but were not sworn to the faithful discharge of their duties till said 15th of October; said appraisers made a report, of which the following is a true copy," &c.   Though the appraisal does not show it, there seems sufficient in this statement to lead to the impression that they were all sworn, met, and acted.   This point can be made certain, and the appraisal amended according to the fact, if necessary.

VI.   It is claimed that the sale of the cow was illegal, by reason of the delay, which, it is said, shows gross laches, making the defendant a wrong-doer from the beginning; but it is a settled rule, that mere nonfeasance does not make a party a wrong-doer *ab initio*.   *Ordway* v. *Ferrin*, 3 N. H. 69; *Parker* v. *Pattee*, 4 N. H. 530; *Gardner* v. *Campbell*, 15 Johns. 401; *Six Carpenters' Case*, 8 Co. 290; *Ferrin* v. *Symonds*, 11 N. H. 366.   The statute imposes no further duty on the party distraining, than that of giving notice of the impounding.   He has the option of proceeding, by appraisal or sale, to obtain payment of his damages, or, if no owner appears, he may take the creatures out of

the pound, and proceed with them as strays.  Rev. Stat., ch. 137, sec. 13.  At common law, beasts, taken damage feasant and impounded, must remain in the pound till the owner made satisfaction, or contested the right to distrain, by replevying the chattels.  3 Bla. Com. 13.

VII.  The defendant contends that the action of trover is not the proper action.  "The wrongful taking," says Chitty, (1 Plead. 153,) "of the goods of another, who has the right of immediate possession, is of itself a conversion, and, whenever trespass will lie for taking goods of the plaintiff wrongfully, trover will also lie.  *Rackham* v. *Jesup*, 3 Wils. 332; *Cooper* v. *Monke*, Willes, 55; 2 Saund. 47 k. n. 1. And if the goods be wrongfully taken as a distress, though they be not removed from the place in which they were, yet trover may be supported, because the possession in point of law is changed by their being seized as a distress.  *Cooper* v. *Monke*, 1 Willes 56."  The same point is held in *Bishop* v. *Montague*, Cro. El. 824; *Skipwith* v. *Blanchard*, 6 T. R. 298; Cro. Jac. 50; *Cooper* v. *Chitty*, 1 Burr. 31; and in *Put* v. *Rawsterne*, 4 Sir T. Ray 472, in which it was held that trover would lie for goods taken under a wrongful distress; *Pierce* v. *Benjamin*, 14 Pick 360; *Farrington* v. *Payne*, 15 Johns. 431; *Prescott* v. *Wright*, 6 Mass. 20; *Wallis* v. *Truesdell*, 6 Pick. 455; *Connah* v. *Hale*, 23 Wend. 462; 2 Saund. Pl. and Ev. 869.

VIII.  In trover it is not usual to plead any other plea than the general issue, not guilty, except the plea of the statute of limitations and a release.  1 Ch. Pl. 490.  The defendant, under the general issue of not guilty, may prove that the conversion complained of was done by authority of law in making a distress, though the proceedings may have been irregular.  *Wallace* v. *King*, 1 H. B. 13; see *Skipwith* v. *Blanchard*, 6 T. R. 298; 3 Phill. Ev. 229.

*Case discharged.*